UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MILES TIMOTHY MCCHRISTON,

        Petitioner,

v.                                Case No. 3:21-cv-67-HES-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

## ORDER

### I. Status

Petitioner Miles Timothy McChriston, an inmate of the Florida penal system, initiated this action on January 15, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, McChriston challenges a 2014 state court (Duval County, Florida) judgment of conviction for first-degree murder. He raises twelve grounds for relief. See Petition at 5–41. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 5). They also submitted exhibits. See Docs. 5-2 through 5-9; 10-1 through 10-4. McChriston filed a

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

brief in reply (Reply; Doc. 8) with exhibits (Docs. 8-2 through 8-8). This action is ripe for review.

## II. Relevant Procedural History

On April 4, 2013, the State of Florida charged McChriston by indictment with first-degree murder. Doc. 5-2 at 59–61. On October 22, 2014, a jury found McChriston guilty as charged in the indictment. Doc. 5-5 at 95–96. The trial court sentenced McChriston to a term of life imprisonment. Id. at 100–06. On direct appeal, with the benefit of counsel, McChriston filed an initial brief, arguing the trial court erred when it: (1) denied the defense's motion for judgment of acquittal and (2) failed to reweigh the evidence before denying the defense's motion for new trial. Doc. 10-1. The State filed an answer brief. Doc. 10-2. The First DCA per curiam affirmed McChriston's conviction and sentence on December 1, 2015, Doc. 10-3, and issued the mandate on December 29, 2015, Doc. 10-4.

Beginning on August 1, 2016, McChriston filed multiple motions for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, culminating with a motion (Rule 3.850 motion) that raised ten grounds for relief. Doc. 5-9 at 6–17, 20–32, 37–49, 57–78. In his Rule 3.850 motion, McChriston alleged counsel was ineffective when she failed to: (1) file a

motion to dismiss the indictment; (2) object to photographs of the victim's shirt; (3) properly cross-examine Detective Anthony Dziergowski; (4) present a defense at trial; (5) object to the prosecutor's closing argument that misrepresented McChriston's statements to law enforcement; (6) object to the prosecutor's closing argument about McChriston's state of mind at the time of the murder; (7) object to the prosecutor's explanation of justifiable and excusable homicide; (8) object to the prosecutor instructing the jury to show prejudice; (9) object to the prosecutor's argument about facts not in evidence; and (10) object to and move for a mistrial based on a sleeping juror. Id. at 57–78. The postconviction court held an evidentiary hearing on ground ten. See id. at 86–87. On November 13, 2018, the postconviction denied relief on all grounds. Id. at 156–66. McChriston pursued an appeal. The First DCA per curiam affirmed the denial of relief without a written opinion on March 24, 2020, id. at 902, and issued the mandate on June 30, 2020, id. at 920.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

3

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [McChriston's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v.

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It

> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

6

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

7

state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest

8

court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

9

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

10

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant

13

> of a fair trial, a trial whose result is reliable." Id., at
> 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." Richter, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." Id. (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the Strickland standard was

14

> incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, McChriston argues that the trial court violated his right to due process when it denied his motion for judgment of acquittal. <u>See</u> Petition at 5–12. He contends that the evidence at trial did not suggest "any kind of plan or scheme or reflection or premeditation," and, as such, the State

failed to present sufficient evidence of the premeditation element of first-degree murder. Id. at 6. McChriston raised this issue on direct appeal, Doc. 10-1 at 18–20, and the State filed an answer brief, Doc. 10-2 at 20–28. The First DCA per curiam affirmed McChriston's conviction and sentence without a written opinion. Doc. 10-3.

The Court determines that McChriston did not fairly present the federal nature of his claim to the state court. On direct appeal, McChriston relied exclusively on Florida law to argue that the trial court erred when it denied his motion for judgment of acquittal. Doc. 10-1 at 18–20. Nevertheless, McChriston contends in his Reply that he alerted the state court to the federal nature of his claim by citing to Tibbs v. State, 397 So. 2d 1120 (Fla. 1981), which sets forth the federal standard for "deciding whether evidence is sufficient to sustain a jury guilty verdict." Reply at 8. The Court is not persuaded. Tibbs concerns the distinction between an appellate court's reversal of a conviction based on the weight of the evidence and one based on the sufficiency of the evidence. 397 So. 2d at 1121. It does not cite to or discuss the leading federal case on due process, Jackson v. Virginia, 443 U.S. 307 (1979). As such, McChriston did not alert the state court to the federal nature of his claim, and in failing to do so, deprived the state court of a

16

meaningful opportunity to review the claim. <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. McChriston has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, Ground One is due to be denied as procedurally barred.

Nevertheless, even if McChriston properly exhausted the claim in Ground One, he is still not entitled to relief. In its appellate brief, the State addressed this claim on the merits, Doc. 10-2 at 20–28; therefore, the appellate court may have affirmed McChriston's conviction based on the State's argument. If the appellate court addressed the merits of this claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, McChriston is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, McChriston's claim is without merit because the State

presented sufficient evidence to support his conviction for first-degree murder. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Id. Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010)[6] (per curiam). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson, 443 U.S. at 319.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found McChriston committed the offense of first-degree murder. The State presented evidence that, on the

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

evening of July 24, 2012, McChriston, Richard Persons, James "Bossman" Williams, and Corey Bright went to the victim's house to confront him about assaulting his girlfriend, Persons' cousin. Docs. 5-7 at 217–19, 223–26, 274–78; 5-8 at 141–46. After the confrontation escalated, the four men shot the victim. Id. McChriston admitted to law enforcement that he shot the victim twice. Doc. 5-8 at 153. Forensic evidence connected the gun and bullets that McChriston used during the incident to those that fatally wounded the victim. Docs. 5-7 at 312–13, 321; 5-8 at 47–49, 147–48, 153.

As to premeditation, the evidence established that McChriston shot the victim twice in the back with a .45 caliber gun. Doc. 5-8 at 147–48, 153. He stated that he had experience with guns and aimed "center mass." Id. at 156. Moreover, McChriston and Persons had visited the victim's house to confront him on the afternoon of July 24, 2012; however, he was not at the house. Docs. 5-7 at 214–17; 5-8 at 140. The shooting occurred when they returned for the victim later that day. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for first-degree murder. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. Given the record, the trial court did not err in denying McChriston's motion for

19

judgment of acquittal. Therefore, McChriston is not entitled to habeas relief as to Ground One.

## B. Ground Two

Next, McChriston alleges that the trial court violated his right to due process when it failed to reweigh the evidence before denying his motion for new trial. See Petition at 13–14. According to McChriston, "the trial court judge stated simply, 'Okay. The motion for new trial is denied.' . . . [and the trial judge] failed to say or do anything indicating he had 'reweighed' the evidence as required." Id. at 14. McChriston raised this issue on direct appeal, Doc. 10-1 at 21–22, and the State filed an answer brief, Doc. 10-2 at 29–34. The First DCA per curiam affirmed McChriston's conviction and sentence without a written opinion. Doc. 10-3.

The Court determines that McChriston did not fairly present the federal nature of his claim to the state court. In his initial brief on appeal, McChriston presented his claim only in the context of state law. Doc. 10-1 at 21–22. He neither cited to a federal statute, nor federal case law. Therefore, he did not alert the state court to the federal nature of his claim, and in failing to do so, deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to

exhaust the claim would be futile, it is procedurally defaulted. McChriston has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, Ground Two is due to be denied as procedurally barred.

Nevertheless, to the extent McChriston asserts that the trial court applied the wrong standard under Florida law when it denied his motion for new trial, the claim presents an issue purely of state law not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of McChriston's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, insofar as McChriston alleges that the trial court's ruling failed to comply with Florida law, this claim provides no basis for federal habeas relief. As such, McChriston is not entitled to federal habeas relief on the claim in Ground Two.

## C. Grounds Three through Five

In his Reply, McChriston concedes Grounds Three through Five. See Reply at 11 ("These three claims are waived in this pleading, as they cannot prevail."). As such, Grounds Three through Five are due to be denied.

## D. Ground Six

In Ground Six, McChriston alleges that counsel was ineffective when she failed to present a defense at trial. Petition at 24. He contends that although he "made statements to the law enforcement officers that would support a jury instruction on self-defense or excusable homicide," counsel failed to request such an instruction. Id.

McChriston raised a substantially similar claim in his Rule 3.850 motion. Doc. 5-9 at 67–68. The postconviction court denied relief, stating in pertinent part:

> Defendant alleges counsel was ineffective for not raising a defense on his behalf. Specifically, Defendant complains counsel was deficient for failing to request an instruction on self-defense based upon Defendant's statement to police. Defendant claims prejudice, alleging that the jury would have rendered a different verdict had the trial court instructed them on self-defense.
>
> However, Defendant is not entitled to relief because he agreed that he was not entitled to an instruction on self-defense based upon the evidence

22

presented, and agreed with counsel's decision not to request an instruction on self-defense. Further, Defendant's statement would not have supported an instruction on self-defense because: (1) Defendant admitted that he did not think the victim was armed at the time of the shooting; (2) Defendant took time to aim before shooting the victim in the back; and (3) Defendant did not describe the victim's movements as threatening when questioned by detectives. Accordingly, Defendant is not entitled to relief on Ground Four.

Id. at 159–60 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 902.

To the extent that the First DCA decided this claim on the merits,[7] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, McChriston is not entitled to relief on the basis of this claim.

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

23

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, McChriston's ineffectiveness claim is still without merit because the record supports the postconviction court's conclusion. "Where there is any evidence introduced at trial which supports the theory of the defense, a defendant is entitled to have the jury instructed on the law applicable to his theory of defense when he so requests." <u>Bryant v. State</u>, 412 So. 2d 347, 350 (Fla. 1982). At the time of the offense, Florida law provided that a person was justified in using deadly force in self-defense if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm or to prevent the imminent commission of a forcible felony. <u>See</u> Fla. Stat. § 776.012 (2012).

In this case, the evidence introduced at trial did not support a self-defense instruction. Rather, witness testimony established that the murder occurred when McChriston and three other individuals, all armed with guns, went to the victim's house to confront him about a domestic violence incident. During McChriston's interview with law enforcement, he stated that he did not think the victim had a gun during the altercation, and McChriston did not describe the victim's movements before the shooting as threatening. Doc. 5-8 at 154, 157. Notably, medical examiner Dr. Valerie Rao testified that the

24

victim sustained most of his injuries to his back, and the bullet from the fatal gunshot wound entered through his back. Doc. 5-7 at 311–13. Based on the above, counsel was not deficient when she failed to request a jury instruction for a defense that the evidence did not support. See Brown v. Warden, 562 F. App'x 779, 781 (11th Cir. 2014) ("Whether defense counsel erred by not requesting a specific jury instruction depends on the state law that governed the defendant's trial. . . . Pursuant to Florida law, defense counsel is not ineffective for failing to request a jury instruction that is not warranted by the evidence."). Accordingly, McChriston is not entitled to federal habeas relief on the claim in Ground Six.

### E. Grounds Seven through Twelve

In Grounds Seven through Eleven, McChriston alleges counsel was ineffective when she failed to object to improper prosecutorial comments during closing arguments. See Petition at 26–38. As Ground Twelve, he asserts that counsel was ineffective when she failed to object and move for a mistrial based on a sleeping juror. Id. at 39–40. McChriston raised substantially similar claims in his Rule 3.850 motion. Doc. 5-9 at 69–75. Following an evidentiary hearing, the postconviction court denied relief. Id.

at 160–65. The First DCA per curiam affirmed the denial of relief without a written opinion. Id. at 902.

Respondents argue that McChriston did not properly exhaust the claims in Grounds Seven through Twelve because he failed to invoke one complete round of the state's appellate review process. See Response at 14–20. According to Respondents, McChriston abandoned the claims on appeal when he failed to raise them in his initial brief, and, therefore, they are procedurally barred from federal habeas review. Id. In his Reply, McChriston does not appear to address Respondents' exhaustion argument. See Reply at 15–21.

The record reflects that McChriston filed a pro se brief on appeal of the postconviction court's denial of his Rule 3.850 motion, but he did not raise the instant claims in his brief. Doc. 5-9 at 864–80. Therefore, McChriston failed to exhaust the claims in Grounds Seven through Twelve. See Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006) (a petitioner abandons a claim when he receives an evidentiary hearing and fails to raise claim in a brief on appeal); Wade v. State, 201 So. 3d 806, 807 (Fla. 1st DCA 2016) ("As the appellant filed an initial brief but failed to address any of the remaining [postconviction] claims, he has waived the right to have them considered in

26

this appeal."). Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Because any future attempt to exhaust the claims would be futile, they are procedurally defaulted. McChriston has demonstrated neither cause and prejudice to excuse his lack of exhaustion nor demonstrated a fundamental miscarriage of justice has occurred. As such, Grounds Seven through Twelve are due to be denied as procedurally barred.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If McChriston seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, McChriston "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

27

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If McChriston appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from

28

the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this _____ day of March, 2024.

HARVEY E. SCHLESINGER
United States District Judge

Jax-9 3/5
c:      Miles Timothy McChriston, #J54136
        Counsel of record